## KAHMANN & McMURRAY v. ÆTNA INS. CO.

(District Court, E. D. Louisiana. July 26, 1916.)

No. 14081.

INSURANCE ☞595—MARINE INSURANCE—ACTION ON POLICY—DEFENSES.

Libelants' tug was insured by respondent, the policy providing that there should be no abandonment as for a constructive total loss unless the cost of repairs would equal 75 per cent. of her agreed value. It also provided that in case of partial loss two years after her original survey libelants should pay one-third the cost of repairs. After such time the tug was injured by striking a sunken rock, run to shore, and sunk in shallow water. Libelants abandoned her and so notified respondent, which had her raised and repaired at a cost of less than one-third of her agreed value. It then tendered her to libelants subject to payment of one-third of the cost of repairs, but the tender was refused, and she was, afterward wrecked in a storm where she was laid up. *Held*, that respondent had fully discharged its obligation under the policy, and that at the time of the wreck the vessel was at libelants' risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1486–1491; Dec. Dig. ☞595.]

In Admiralty. Suit by Kahmann & McMurray, owners of the steamtug Greyhound, against the Ætna Insurance Company. Decree for respondent.

John D. Grace, of New Orleans, La., for libelants.

McCloskey & Benedict and Frank Wm. Hart, all of New Orleans, La., for respondent.

FOSTER, District Judge. This is a suit on a policy of insurance. The libelants, Kahmann & McMurray, were the owners of the tugboat Greyhound. The respondent, the Ætna Insurance Company, issued its policy of insurance on her hull, etc., for $2,500. The policy provided: That in case of loss the assured should use every effort to safeguard and recover the vessel, and if recovered to cause her to be forthwith repaired; that in case of neglect or refusal of insured to repair the vessel the insurer was authorized to have her repaired for the account of the assured; that there should be no abandonment as for a constructive loss unless the necessary repairs, exclusive of the cost of raising her and taking her to the dock, should be equivalent to 75 per cent. of the agreed value of the vessel; that in case of a partial loss (two years after the date of her original custom house survey) one-third of the repairs were to be paid for by the owners; and that if paid for by the insurer to be a lien on the vessel. The agreed value was $3,000.

On the 3d day of January, 1908, more than two years after her original custom house survey, the Greyhound struck a sunken obstruction in the Atchafalaya river, staving a hole in her bow. She was run to the bank and there sunk in shallow water. Lines were run out and she was comparatively secure. Libelants telegraphed to the respondent news of the accident, her captain and crew abandoned

her, and later on February 7, 1908, gave notice of the abandonment to the insurance company and claimed a total loss. In the same letter they notified the insurance company the policy had been assigned to Victor von Schuler. In the meantime the insurance company raised the vessel and took her to Morgan City, where she was hauled out and repaired. After she was raised and after the notice of abandonment, the owners sent a surveyor to view the wreck, and he reported that it was impossible to determine what repairs were necessary until the vessel was hauled out on the ways and the mud cleaned out and an examination made of her machinery. At that time she was afloat. The repairs amounted to $751, and the cost of raising and docking to $845. On March 31, 1908, the respondents gave notice to the libelants that the vessel had been repaired and restored to the same condition in which she was before the accident, and tendered her subject to the payment of the agreed proportion due them under the policy. By mistake they demanded more than was due, to wit, one-third of the total, but the letter showed the two items above referred to. Libelants, however, declined to pay anything and stood on their original notice of abandonment and filed the libel. The vessel remained laid up at the ship yard at Morgan City. On September 20, 1909, a storm of exceptional violence arose, and she was wrecked. This time she was a total loss.

It is evident that libelants were not authorized to abandon the vessel under the terms of the policy. The repairs necessary to put her in the same condition as before the accident did not amount to 50 per cent. of the agreed value, and the facts did not justify a belief on their part that she was a constructive total loss. Therefore it was the duty of libelants to have raised the boat and to have had her repaired themselves. Having declined to do so, they are not in a position to complain of the subsequent raising and repairing of the vessel by the insurance company. It would seem the insurance company acted in good faith and gave libelants due and ample notice that they intended to repair the boat, and the evidence establishes the boat was put in a seaworthy condition. After being repaired and launched, the vessel was tendered to libelants. Under the policy libelants owed some part of the claim. The insurance company demanded too much, but the amount actually due was apparent. Libelants, however, made no effort to settle the matter. The insurance company had fully discharged its obligations under the policy, and when the vessel was subsequently lost in the storm of September, 1909, she was at libelants' risk.

The libel will be dismissed.